Sylvia Burwell Clifford Prakt May it please the Court, Clifford Prakt on behalf of Petitioner Mary Mayhew, the Commissioner of the Maine Department of Health and Human Services. Your Honor, with the permission of the Court, I'd like to reserve three minutes for rebuttal. You may have it. Thank you, Your Honor. In National Federation of Independent Business, the Supreme Court held, among other things, that Congress can't use the threat of a loss of all Medicaid funding to require states to include 19- and 20-year-olds in their Medicaid rolls. In this case, the same question is before you, but regarding the maintenance of effort provision in the Affordable Care Act. The maintenance of effort provision provides that, as applied to Maine, that Maine must include in its Medicaid rolls 19- and 20-year-olds, low-income 19- and 20-year-olds, or lose all of its Medicaid funding. The Secretary and the Attorney General say that the reason that the maintenance of effort provision survives NFIB is because Maine had previously opted in to covering 19- and 20-year-olds before the Affordable Care Act was enacted. If this Court were to adopt that reasoning, it would mean that the NFIB decision by the Supreme Court is a dead letter. That case would no longer act as a limit on any future exercise of the Congressional spending power. Specifically, it would not, in the future, prevent Congress from exercising the spending power in the exact same coercive way that it did in the ACA and was struck down in NFIB. But why do you say that? Because the NFIB case involved a mandate by Congress for states to create additional coverage, to expand coverage. Your Honor, because since NFIB, the mandatory Medicaid expansion is now optional, and many states are still covering 19- and 20-year-olds, 40- and 50-year-olds, etc. And if the principle here is that once a state opts in to covering a population that is optional under Medicaid, Congress can then mandate that the state continue such coverage. Why wouldn't it be that they just, if they didn't, they would lose the Medicaid money for the expansion. They wouldn't lose all the other Medicaid dollars. Well, if the maintenance of effort provision were actually tied. No, no, but you're talking about the new expansion. We know under NFIB the new expansion is a new program. The new expansion is optional coverage. No, no. The Medicaid expansion, forget the maintenance of effort provision, right? The Medicaid expansion is a new program under NFIB. It is. And coverage again. If you then were to take away, when they opt out, you lose that money. But you don't lose the old Medicaid dollars. So, if we say that the maintenance of effort provision is just the old program, then you could potentially lose the old dollars. But if we said it was a new program, all you would lose is the new money. So, I don't quite follow. That's not the correct analogy. Okay, why not? The maintenance of effort provision is not simply the old Medicaid program. Well, that's the whole issue. It applies only to populations who are optional under old Medicaid. Populations under the expansion are now optional as well. And if it's true that the Medicaid expansion can be sustained because Maine had chosen to cover an optional population and can be enforced through a loss of all Medicaid funds. The argument would be that they could expand it because it was part of the old program. Now, it's not just because it's optional. The argument would have to be because it was children under the old program that that is part of the old program. That's one of the factors NFIB talks to us about as to whether we're dealing with something new or something old. I understand you contest that the MOE, even though it only applies to 21-year-olds and under, is an old program as opposed to a new program. But what's the argument as to why we'd be wrong to think that changing from optional to mandatory with respect to 21 and under makes it still part of the old program rather than transforming it into the new program? Because what NFIB suggests is permissible as far as the old program is the old program in that sense means populations coverage of whom is mandated under Medicaid, not populations coverage of whom is optional under Medicaid. It wasn't true for pregnant women. So they made all of a sudden they made pregnant women mandatory and NFIB suggests that was a permissible alteration of the old program. So my question is what is your argument? The coverage of pregnant women was never challenged. NFIB certainly suggests it's permissible. And Chief Justice Roberts says exactly why he sees it that way. He says because it is no stretch to say that Medicaid includes a program which has always mandated coverage for needy families with dependent children. It is no stretch of that principle to say that a pregnant woman and her child in utero come within the scope of that. That's not a stretch. But to say that Medicaid has never required that persons over the age of 18 be covered simply because they are low income. It's never been the case before. Wasn't it true for a while that they didn't require 18-year-olds to be mandatorily covered no matter what just because they were poor? But they've been mandated that. Is that permissible? It's never been challenged. We don't know. But your theory requires to conclude that that was impermissible. A mandate that you cover... Any child who was previously just a dependent child under the meaning of the initial Medicaid. Correct. If they then change it to just children, 18, 17, 15, whatever. Changing the definition of who a dependent child is. Who then just because they're poor now get covered. Changing the definition of how big a needy family with dependent children is probably would survive. But...and expanding Medicaid to include 18-year-olds, non...well, I don't know what a non-dependent, I guess some emancipated minor may... But that would not be a very usual circumstance. I'm not sure that circumstance would really raise the questions that we're raising. Here, what we're talking about is expanding the Medicaid population well beyond what NFIB enumerates as the classic core of Medicaid, which is the blind, the disabled, the elderly, and needy families with dependent children. But it doesn't mean by electing to cover 19- and 20-year-olds in effect made its own decision that this is within the classic purview of Medicaid. It chose to cover an optional population just as many states since have chosen to cover 40-year-olds, 50-year-olds as an optional population. And that's why I say NFIB becomes a dead letter if the court were to adopt the reasoning of the Secretary and the Attorney General. Because every state that has opted in to expanded Medicaid coverage under the Affordable Care Act since the NFIB decision has chosen now to cover an optional population that wasn't traditionally part of Medicaid. And the reasoning that the Secretary and the Attorney General are asking the court to adopt would say once a state opts to cover an optional population, then the Congress can make that coverage for those opt-in states mandatory. But we certainly don't have to say that in order to affirm the Secretary's decision. Well, you won't be able to. In order to affirm the Secretary's decision, I think, and distinguish this case from NFIB, I think you do have to say that coverage of populations who have never historically been required populations under Medicaid can be mandated with the threat of the loss of all Medicaid funds. And an exacerbating factor here is can be mandated for only some states, not all states across the board. Before we get to the equal footing point, just two points on this argument. So I think what you're saying would be true unless we were to conclude that because the category here is 21 and under means that under NFIB's logic, it would be permissible for us to consider this part of the old program, which I know you contest. But on that point, as to why you might contest it, could you just help me with something? What is the funding stream under the MOE? Do you get the new 90% share? Do you get the FMAP, or do you just get the old Medicaid? You get your old, you get your old, that's right. Doesn't that suggest, doesn't that suggest it's part of the old program that you're getting the same funding? Because NFIB said you're now in a new financing mechanism. But by your account, under the MOE, it's a deal under the old financing. Well, let's step back. If the question is, if I as a state choose to cover 19 and 20 year olds, do I get increased FMAP under the ACA? The answer to that is yes, as long as you are not a state who previously had given that coverage. So it's definitely part of the new program to the extent that states that didn't previously cover those people elect to cover 19 and 20 year olds. But for Maine, it is, Maine will not get any increased FMAP. I mean, the maintenance of effort provision in the design of the ACA was never intended to apply to this situation. It wasn't intended to cover mandatory coverage of all 19 and 20 year olds under 133% of the FPL when the mandatory Medicaid expansion gets struck down and turned into a purely optional program. The maintenance of effort provision was designed to maintain the status quo until 2014 when the Medicaid expansion would take effect and all states would be bound by it in the original congressional design. And after 2014, to require states that were covering 19 and 20 year olds at some level higher than 133% of the FPL to continue to do so at that higher level. And how would they have been paid? They would have been paid with the old Medicaid? They would have been paid with the old Medicaid funds for that population. There was no increased funding being extended for that population. That is correct. And they don't have to provide the new benefits package either, which I understand is lower. They are subject to the old Medicaid benefits package, subject to the old Medicaid funding. Correct, Your Honor. And if, now the NFIB court, and I'm sure the court is aware how fractured the opinions are in that decision, but I think what we can all agree on is that the NFIB court attended very closely to the severability provision and what is severable and what is not. And the Medicaid expansion as a mandatory program covered 19 and 20 year olds just as much as it covered 40 year olds and 50 year olds. And the NFIB court did not sever the application of the Medicaid expansion only to those 21 and above. It made it optional as to everybody, 19, 20, and right on up to 64. So the idea that the Supreme Court had in mind that this would be okay as applied to 19 and 20 year olds because Justice Roberts takes on an argument that Justice Ginsburg raised in dissent simply isn't true to the record. Thank you. May it please the court, Elisa Klein for the federal government. The reasoning of NFIB confirms that Congress could enact a hypothetical provision that says every state needs to include 19 and 20 year olds, you know, who meet income standards, as a mandatory category. That's the Chief Justice, when he concluded that the adult eligibility expansion was in effect a new program, expressly distinguished the 1988 amendment that required states to cover all 18 year olds up to 100% of the federal poverty level. And emphasized children have always been one of the core categories covered under the Medicaid program. That's, since 1988, 18 year olds, it doesn't matter whether they qualify for AFDC. It's just, you know, connected to the federal poverty level. 19 and 20 year olds have been treated as children since 1965. Coverage of that age group, if they met the relevant income and resource standards, was mandatory at the inception of the act. Since 1967, 19 and 20 year olds who are covered by a state program have to be given the same special benefits package that children, other children, younger children get, the early periodic screening diagnosis and treatment package. And so there's no doubt if we're, this is just a hypothetical, but if we're imagining Congress said, okay, I read NFIB. I understand that I cannot say that states as a condition of ongoing Medicaid participation have to cover every adult up to age 65. But Congress clearly could say 19 and 20 year olds are children and we're treating them as children. And incidentally, Dole itself was about, as a condition of federal funds, requiring states to raise the drinking age to 21, treating 19 and 20 year olds as children. There's nothing novel about that and there's nothing constitutionally suspect under NFIB. Can I, your argument proceeds from rather broad premises. Congress could in the future if it wanted to do this. I'm a bit with Judge Selya on we probably don't need to answer that question in order to decide this case. If you sort of frame this in terms of the old program versus the new expansion for adults, which was struck down, could you list for me say one, two, three, four, five, the reasons why this fits into the old program category? Yes. And I'll focus on the most narrow and modest set of circumstances. Here, because it's a maintenance of effort provision, not an expansion, it's not, it is literally not requiring Maine or any of the other affected states to do something new. It is maintaining the status quo for a limited number of years. Second, the population at issue here, Maine it happens to be 19 and 20 year olds, but the provision is about children and includes anyone under age 21. And that population has long been one of the core groups covered under the Medicaid program and NFIB emphasizes that covering children is different from covering adults. NFIB talked about how the expansion population, the new program was funded by a different mechanism, 100% to start, going down to 90% and received a different benefits package, the benchmark package. That's not true here. It's the same funding mechanism that's been in place that affects all of the Maine program. And as I said, the children are getting the same package they've been getting since Maine chose to cover them in 1991, which includes the early periodic screening diagnosis and treatment services. So, I hope I'm answering Your Honor's question, but we don't regard this as a case in which the court is required to address any broad propositions. We want to make clear that we believe Congress could enact the hypothetical 19 and 20 year old expansion because they're children, but we're not asking the court to decide that question. When you say nothing new occurs here, that's literally not true because they're now mandated to provide coverage, whereas before they were not mandated. So, the status quo would have been to keep it optional. Yes, and let me explain how Congress uses maintenance, these temporary maintenance of effort provisions in the Medicaid statute over time, and some of these are discussed in the amicus brief. So, when Congress does something else new, like creates the CHIP program, or here most notably creates the federally subsidized coverage on the exchanges, the operating principle is do no harm. It does not want to thereby create an incentive for the state to drop people it had previously been covering. And so, particularly for children, we'll have transitional provisions that say, no, but you can't start dropping people on the often mistaken premise that they will be easily transitioned to new coverage. In fact, there are gaps in enrollment, people lose better benefits packages, or Congress may just not want to shift from an existing program to one that is now, you know, funded through federal dollars exclusively. So, that's the way Congress has used these transitional maintenance of effort provisions in the Medicaid program. And, therefore, that's the historic understanding of how this is handled under the old program. Yes, I mean, NFIB emphasized that even though Congress reserved the right to amend the Medicaid program and has done so probably 50 times, the states could not have imagined so dramatic a change as the adult eligibility expansion. But, you know, the Affordable Care Act also added smoking cessation drugs for pregnant women to the list of mandatory services that have to be covered. And, I don't think even the commissioner would say that is unconstitutional under the reasoning of NFIB. On the equal footing argument, the blue brief makes the point that the government doesn't seem to offer a justification for the disparate treatment of the states that were providing the optional benefits in the past. Does the government have an explanation of why they're being singled out? Yes, but I want to resist the terminology singled out. They made an equal sovereignty claim under Shelby and said you need some sort of special justification and talked about congressional findings and legislative record. I'm just asking whether you have any justification. Yes, no, the explanation that I was just given, if you look at the structure and the way Congress uses maintenance of effort requirements, it doesn't want, if a state's been covering a group all along by creating, you know, the exchanges and the subsidized coverage, it doesn't want to create an incentive. And, could you explain the reason why they don't get the new money? Well, no, this is a general point that it's the same idea. Congress offered this, you know, 100% down to 90% federal reimbursement rate for newly eligible adults. But, to the extent states have been covering adults before as optional, you know, beneficiaries, they do not get. Why? Because the idea is not to displace, it's not to save money, you know, for the state. The idea is to get people covered who were uninsured, who didn't have the benefit. It's not just supposed to be substituting federal money for the state money that was already there. And, that's typical with maintenance of effort as illustrated by the Bennett decision that we cite in our brief. So, fundamental to your unequal footing argument is the notion, is it not that Maine hasn't been singled out at all, that every state has simply been required to continue funding those children whom it was funding when the Affordable Care Act was passed? Yes, it's a uniform provision, just like the formula, the big formula for federal matching rates applies differently in different states. Maine has the most generous federal matching rate in the circuit. That doesn't mean that Massachusetts is singled out for disfavored treatment. That's just a very common feature of a federal spending program. And, how is that different than Shelby County's equal footing concern? Well, there are a number of things. First, Shelby County, of course, was. Just on this point about the uniformity. So, if there's a general standard, it will apply differently in different states. That's problematic in Shelby County or am I misunderstanding? Shelby County emphasized that the government had conceded that the formula was reverse engineered to target a disfavored subset of states that Congress thought about which states to cover. And then, essentially, Jerry rigged the formula in order to reach those states. But that's arguably true of every maintenance of effort provision because you know what states were already doing it. No, as a practical matter, every state was probably affected one way or another by the maintenance of effort provision. Recall there was one for adults that expired when the exchanges became operational in 2014. I think Maine talks about 14 other states that Maine says are affected just by the 19 and 20-year-old coverage. But then there are all the states that covered five-year-olds up to 150% of the federal poverty level. I mean, this has a quite widespread impact. The commissioner alone asked the secretary to approve a plan amendment that was inconsistent with federal law. So, one more, which is just on the phase out in 2019, is that significant to the equal footing argument? I know Shelby County talked about a sunset provision in the initial Voting Rights Act that then didn't seem to have been honored when they kept amending it. Here, as the case comes to us, this restriction only lasts until 2019. Is that significant to the equal footing argument, relevant? I don't know that it's necessary because there are many maintenance of effort requirements that don't have a phase out. But it certainly makes it even more modest. And the idea was allowing Congress to have time to assess the new lay of the landscape after the exchanges were operational for putting children at risk of losing coverage. Thank you. Wait. Good morning, may it please the court. My name is Chris Taub on behalf of the intervener, the attorney general for the state of Maine. And with me today is the attorney general, the Honorable Janet T. Mills. Your honors, there's a common theme that really unites both of the arguments that the commissioner is making, both the spending clause argument and the equal sovereignty argument. And the common theme is that they've taken two cases where there was an extraordinary set of facts. And where based on that extraordinary set of facts, the Supreme Court found that Congress had exceeded its powers. And then they're trying to take those holdings and apply it to this much more mundane situation. As an initial matter, the commissioner is mischaracterizing our argument when she says that we are arguing that the reason that this MOE permission is constitutional is because Congress can require states to do things that they were already doing. That's not our argument. Our argument, and this is something that Justice Roberts acknowledged in his opinion, is that Congress has expressly reserved the right to alter and amend the Medicaid program. And states have been aware of that since 1965. What was going on in the NFIB case was that Justice Roberts found that Congress wasn't merely altering and expanding the Medicaid program. It was essentially creating an entirely new program. A program that was going to cover this huge new population costing billions of dollars a year, and then was going to say to states, if you don't cover this whole new program, we're going to pull your funding for the existing program. But at the same time that he said that, he also acknowledged that over the years Congress has expanded the eligibility. Congress required states to cover up to six-year-olds, poor six-year-olds, even though that population had never been covered. He acknowledged that Congress had required states to cover up to 18-year-olds, poor 18-year-olds, even though that population had never been covered. And Justice Roberts acknowledged that these are the kinds of alterations of the Medicaid program that Congress has the power to make. And that's what we're doing here. The MOE provision is essentially, with respect to Maine, saying in addition to covering 18-year-olds, now you also have to cover 19 and 20-year-olds. This population has always been considered children for purposes of the Medicaid program. It's always been at the core of the program. As Judge Selya referred to, the fact that Maine has covered this group as children, as part of its Medicaid program, shows that Maine itself has acknowledged that this is a core part of the Medicaid program. And unless there are any questions about the spending clause argument, I'd just briefly like to address the equal sovereignty argument. Again, that was an extreme set of facts. That was a situation where Congress had declared that certain states, and they didn't single out the states by name, but as Ms. Klein alluded to, they reverse engineered the statute so that it would only apply to certain states. And they required those states to get approval from the federal government before they could change their election laws. And the opinion is full of references to what an extraordinary departure this kind of scheme was from the ordinary principles of federalism. What was going on there was that a state law would not be valid unless the federal government approved it. And so it was based on those unique facts that the Supreme Court departed from decades of precedent. I mean, for decades, the court understood and said that the equal sovereignty argument is really about what happens when a state gets admitted to the Union. But on those extraordinary set of facts, the Supreme Court applied that doctrine to the Voting Rights Act. Just so I understand your position on equal footing, you'd be OK with an opinion from our court saying that the reason that Maine is subject to the maintenance of effort provision is because we don't like Maine? Well, Maine has not been singled out. I mean, the maintenance of effort provision applies to all states equally. And it applies based on what those states have voluntarily done in the past. And in that respect, it's like countless other maintenance of efforts provisions that Congress had done, not just in the health care area, but in other areas as well. And I'm not sure if I answered your question, Your Honor. But our view is that Maine is not being singled out in this situation. Unless there are any other questions. No. Thank you. Thank you very much. The argument that you've just heard from the Secretary and from the Attorney General is that if the Medicaid expansion, instead of saying that coverage of everyone under 65 was mandatory, said coverage of everyone under 21 is mandatory, then the Supreme Court would have upheld it. That is the essence of the argument. And I think that the careful attention that the Supreme Court paid to the severability provision in NFIB belies that. If the Supreme Court was of the view that coverage of people under 21 could be mandated under a threat of a loss of all Medicaid funding, then the Supreme Court would have severed the application of the Medicaid expansion as it applied to people under 21. Was that an issue ever before the Supreme Court? Was the issue of severing to cover people under 21? I don't recall any of the parties asked the court to consider that. The severability as applied to the under 21 population is not discussed in NFIB. That's right. But severability explains the outcome of that case. But I thought the severance was just of the remedy. The severance was of the remedy. But the severance of the remedy, let's remember what that means. That means that any state can opt in to covering this population, but can't be forced to. Exactly, except for the maintenance of effort provision. Well, that's the issue, right? But if the expansion, which says every state has to cover everyone under 21 and everyone from 21 to 64, if the remedy can be severed only so far as it needs to be to render the statute constitutional, it would have been severed only as to that over 21 population, or 21 and above population, not as it applied to the 19 and 20-year-olds, if NFIB really were thinking along those lines. And I understand the court's reluctance to talk about what future Congresses might do or how future cases might come out, and I'm really not asking the court to do that precisely. What I'm asking the court to do is to contemplate what the implications of a particular reading of NFIB are, because that has to inform how the court interprets what the Supreme Court was thinking in NFIB. If the reading is right, that it renders NFIB a dead letter, the Supreme Court would have anticipated that and would have said, we're ruling that this is going to be optional now, but only for a short period of time because Congress, a later Congress, will be able to mandate this for anybody who chooses to opt in. We've got many other arguments on retroactivity, other arguments under NFIB as well as unequal sovereignty. I'm happy to answer any questions, but we'll rest on our briefs on those arguments. Barring other questions. For those of us who are judges, perhaps attribute less omniscience to judges than you do. Not omniscience, Your Honor, not omniscience. Simply careful attention to the implications of holdings as this court would pay or as the Supreme Court does. Thank you, Your Honor.